## C. A. DICKINSON v. THE STATE.

No. 10162.   Delivered December 22, 1926.

1.—Rape—Bills of Exception—In Question and Answer Form—Cannot Be Considered.

Appellant presents in this record two bills of exception in question and answer form, which cannot be considered. The statute of this state provides that bills of exception must be in narrative form, and the unbroken line of decisions by this court has held that bills in question and answer form .will not be considered on appeal.

2.—Same—Evidence—Held Insufficient.

A careful analysis of the state's evidence in this case fails to convince the court that the evidence established a ravishment by force. The facts and circumstances attending the purported assault; the failure of the prosecutrix to complain to her husband a few minutes thereafter when the opportunity was presented; the absence of any marks of violence on the person

of prosecutrix, or any evidence shown in her appearance of agitation or excitement a few minutes after the alleged occurrence, all convince the court, however reluctant we are to disturb the finding of a jury, that the evidence is not sufficient to support the verdict.

Appeal from the District Court of Wilbarger County. Tried below before the Hon. Robert Cole, Judge.

Appeal from a conviction of rape, penalty seven years in the penitentiary.

The opinion states the case.

*Berry, Stokes & Killough, E. M. Carter* and *C. C. McDonald,* for appellant. On the insufficiency of the evidence to support the conviction, appellant cites as analogous the following cases:

Price v. State, 35 S. W. 988.
Topolouk v. State, 40 Tex. Crim. Rep. 160.
Logan v. State, 148 S. W. 713.
Hill v. State, 183 S. W. 1162.
Pickerell v. State, 195 S. W. 191.
Charles v. State, 196 S. W. 179.
Perez v. State, 94 S. W. 1036.
Rhea v. State, 17 S. W. 731.
Edmondson v. State, 44 S. W. 154.
Tyler v. State, 143 S. W. 620.
Terry v. State, 266 S. W. 511.
Davis v. State, 272 S. W. 483.
Rogers v. State, 225 S. W. 57.
Baldridge v. State, 74 S. W. 376.
Vinsen v. State, 277 S. W. 644.
Patton v. State, 282 S. W. 240.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in District Court of Wilbarger County of rape; punishment, seven years in the penitentiary.

There are but two bills of exception, each of which is in question and answer form and for that reason we do not discuss same.

There is a very serious attack upon the sufficiency of the testimony. The matter has received our careful consideration. Appellant boarded in the home of prosecutrix and her husband, and had been there for several months prior to this alleged rape.

All parties admitted that he was treated very much as a member of the family. There is no dispute over the fact that he got up every morning and made the fires before the other members of the family arose. Prosecutrix was in the habit of getting up next, and later the husband of prosecutrix would get up, and ordinarily would go for milk for the family use while prosecutrix was getting breakfast. This usual order of things operated upon the day of the alleged rape. The husband had gone for the milk and prosecutrix was in the kitchen stirring some cream of wheat when, as she claimed, appellant came into the kitchen, came up behind her, and asked her to be nice to him, and she replied asking him what he meant, when he put his arms around her waist, picked her up, carried her into his room and laid her on the bed and had intercourse with her. She said she holloed and struggled and beat him with her hands and fists and cried but to no avail. Her clothing was not torn. She asserted that he pushed her teddies aside and effected penetration. She further testified that after the act was accomplished she returned to the kitchen and resumed her preparations for breakfast. About this time her husband returned with the milk and breakfast was placed upon the table and eaten by appellant and her husband, prosecutrix averring that she did not eat any breakfast but fed her little child. She said that when her husband returned she was crying. After breakfast the two men got into the husband's car and went to where they were working together upon a job of carpentering. When they returned at noon prosecutrix had dinner ready and the two men ate and went back to their work. When the day's work was ended the two men came home and prosecutrix gave them their supper, after which she told her husband, according to her testimony and his, that she wanted him to take her over to his mother's place, that she had something to tell him. After leaving the house and going some distance she told her husband, according to their testimony, of the alleged rape, and they proceeded to town and filed complaint against appellant who remained at their home and was later arrested there by an officer. The officer testified that appellant appeared to be surprised and to look upon the arrest as a joke. The husband of prosecutrix testified for the state that if she was crying when he returned home from getting the milk that morning he did not observe it, that he saw no evidences of excitement or trouble, and that she made no statement to him then of the matter. He further said that she told him nothing about it when he came home at noon with appellant, nor did she

tell him about it until that night as they were going to town; they lived just outside of the city of Vernon.    Prosecutrix admitted that she did not scratch appellant's face or make any bruises upon his face in any of her resistance to his assault upon her.    The nearest neighbor lived about a quarter of a mile away but was not introduced as a witness. Appellant testified that soon after going to board at said place he suffered from a short attack of illness and that prosecutrix nursed him during such illness, and that while in a feverish condition on one occasion he called her honey and later apologized for it, and that she told him that it was the sweetest word she had ever heard. Appellant detailed a constantly growing intimacy between himself and the woman until she got in the the habit of coming by where he was in the room every morning after he had made the fires and kissing him and hugging him, and that she gave him her pictures, and told him that if a woman could not get loving from her husband she would get it somewhere else, etc., etc.; that the intimacy finally led to repeated acts of intercourse between them, all of which he says was with the consent and active participation of prosecutrix.    He admitted that he did have intercourse with her on the morning in question, but that it was a mutual affair, and that she did not resist but returned to her household duties after same was ended.    He further testified that he had told her that he was going to leave, that the job he and her husband were engaged upon was finished, and that she had begged him not to go, and told him, in substance, that if he left she would follow him.

In determining the sufficiency of the testimony to support a conclusion of guilt, the state's testimony must ordinarily be looked to and analyzed without reference to that of the defendant.    We are constrained in this case to believe that the testimony of the state is such as does not comport with human experience and with reason.    It seems to stagger credulity that a man in possession of his senses and without any previous encouragement or prior occurrences would walk into the room of a white woman in this country, whose husband had gone away for fifteen minutes absence, and by force ravish her.    It is practically impossible to believe that in such case no clothing would be torn, no bruises would be inflicted upon either party, and no marks of violence be exhibited.    It would be hard to believe that when the husband returned after the limited absence the wife would be so apparently in an ordinary condition, mentally and physically, as that he would observe no difference, and that

no complaint or outcry would then be made. A woman's virtue is her dearest possession, her crowning jewel, and he who robs her of it in this country may, in most cases, expect punishment and at most a speedy report and a swift trial. Prosecutrix did not run down the road to meet her husband and report the outrage. She did not exhibit her bruised and swollen body or injured parts or torn clothing, or other things that evidenced resistance to the utmost extent before she was deflowered. She was not even threatened by appellant, and does not assert that he told her that he would kill her or kill her husband, or do any violence to either of them. Ordinarily in this country when a man by force assaults a woman he flees and is captured only after efforts to escape. We have in this case a ravisher by force calmly awaiting the return of the husband, coolly eating breakfast with him and working with him all during the day, returning for dinner and supper, and after the husband and wife leave home that night together he remains in the building and is found there later by the officer.

We regret to reverse cases where the jury has passed upon the credibility of the witnesses and the weight of the testimony, but verdicts in cases of this kind may rest upon easily aroused passion in the human breast, and in this case the accused was admittedly a married man with obligations resting upon him to another woman and children, and was in the home of his friend, and the despoiler of his friend's home in any event, and we can easily understand how in such case, upon facts the doubtfulness of which in the mind of the jury is evidenced by the smallness of the penalty, a jury would be unwilling to acquit. Authorities might be cited without number where this court has reversed cases upon its belief that the jury had been unable to coolly and calmly weigh the evidence because of aroused passions and prejudices.

Being forced to the conclusion that the evidence in this case does not justify the conclusion reached, and that appellant should have been granted a new trial because of the insufficiency of the testimony, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*